**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

Sumaya Aden, as next-of-kin and trustee for the Estate of Isak Abdirahaman Aden, Decedent

Plaintiff,

v.

City of Bloomington, Minnesota; City of Burnsville, Minnesota; City of Eagan, Minnesota; City of Edina, Minnesota; Officer Jacob Peterson; Officer Matthew Ryan; Officer Daniel Nelson; Officer Adam Stier; Officer Anthony Kiehl; Chief Roger New; Lieutenant Andrew Speakman; Sergeant Corey Cardenas; Sergeant Maksim Yakovlev; and John and Jane Does 1-10;

Defendants.

Case No. 20-cv-01508-PJS-BRT

***Jury Trial Demanded***

---

**JOINT ANSWER OF DEFENDANTS CITY OF BLOOMINGTON, CITY OF BURNSVILLE, CITY OF EAGAN, CITY OF EDINA AND OFFICERS JACOB PETERSON, MATTHEW RYAN, DANIEL NELSON, ADAM STIER, ANTHONY KIEHL, CHIEF ROGER NEW, LIEUTENANT ANDREW SPEAKMAN, SERGEANT COREY CARDENAS, AND SERGEANT MAKSIM YAKOVLEV TO PLAINTIFF'S COMPLAINT**

---

COMES NOW Defendants, City of Bloomington, City of Burnsville, City of Eagan, City of Edina, Officer Jacob Peterson, Officer Matthew Ryan, Officer Daniel Nelson, Officer Adam Stier, Officer Anthony Kiehl, Chief Roger New, Lieutenant Andrew Speakman, Sergeant Cory Cardenas and Sergeant Maksim Yakovlev, and for their Answer to Plaintiff's Complaint, state and allege as follows:

1. That they deny each and every matter and thing contained in Plaintiff's Complaint, including any and all headings to paragraphs, except as admitted or qualified herein.

2. That they specifically deny that they are guilty of any negligent, illegal, improper or unconstitutional conduct.

3. With regard to Paragraph 1 and the introductory paragraph of Plaintiff's Complaint, admit that Plaintiff is alleging civil rights and state law violations and is seeking money damages. Defendants deny the remaining allegations in that paragraph and put Plaintiff to proof.

4. That Paragraphs 2, 3 and 4 of Plaintiff's Complaint call for a legal conclusions and Defendants deny any violations of 42 U.S.C. § 1983, the Fourth or Fourteenth Amendments, or state law and therefore deny that the Court has original or supplemental jurisdiction and that venue is proper in this Court.

5. Defendants admit Paragraphs 5 and 6 of Plaintiff's Complaint.

6. As to Paragraph 7 of Plaintiff's Complaint, the allegations are vague and incapable of response. However, Defendants admit that the City of Bloomington is a Minnesota municipality capable of being sued under certain circumstances and it is the employer of Defendants Ryan, Nelson, Stier, Kiehl and Cardenas. Defendants deny the remaining allegations and put Plaintiff to proof.

7. As to Paragraph 8 of Plaintiff's Complaint, the allegations are vague and incapable of response. However, Defendants admit that the City of Burnsville is a Minnesota municipality capable of being sued under certain circumstances and it is the employer of Defendant Yakovlev. Defendants deny the remaining allegations and put Plaintiff to proof.

8. As to Paragraph 9 of Plaintiff's Complaint, the allegations are vague and incapable of response. However, Defendants admit that the City of Eagan is a Minnesota municipality capable of being sued under certain circumstances and it is the employer of

Defendants New, Speakman and Peterson. Defendants deny the remaining allegations and put Plaintiff to proof.

9. As to Paragraph 10 of Plaintiff's Complaint, the allegations are vague and incapable of response. However, Defendants admit that the City of Edina is a Minnesota municipality capable of being sued under certain circumstances. Defendants deny the remaining allegations and put Plaintiff to proof.

10. No response is required as to Paragraph 11 of Plaintiff's Complaint.

11. Paragraph 12 of Plaintiff's Complaint is vague and states legal conclusions. However, Defendants admit that Defendant Peterson was an Eagan Police Officer and was acting in the course and scope of his employment on July 2, 2019.

12. Paragraph 13 of Plaintiff's Complaint is vague and states legal conclusions. However, Defendants admit that Defendant Ryan was a Bloomington Police Officer and was acting in the course and scope of his employment when he responded to a call for assistance from the Eagan Police Department on July 2, 2019.

13. Paragraph 14 of Plaintiff's Complaint is vague and states legal conclusions. However, Defendants admit that Defendant Nelson was a Bloomington Police Officer and was acting in the course and scope of his employment when he responded to a call for assistance from the Eagan Police Department on July 2, 2019.

14. Paragraph 15 of Plaintiff's Complaint is vague and states legal conclusions. However, Defendants admit that Defendant Stier was a Bloomington Police Officer and was acting in the course and scope of his employment when he responded to a call for assistance from the Eagan Police Department on July 2, 2019.

15. Paragraph 16 of Plaintiff's Complaint is vague and states legal conclusions. However, Defendants admit that Defendant Kiehl was a Bloomington Police Officer and was acting in the course and scope of his employment when he responded to a call for assistance from the Eagan Police Department on July 2, 2019.

16. No responses is required for Paragraph 17 of Plaintiff's Complaint.

17. Paragraph 18 of Plaintiff's Complaint is vague and states legal conclusions, and therefore Defendants deny the same and put Plaintiff to proof.

18. Paragraph 19 of Plaintiff's Complaint is vague and states legal conclusions, and therefore Defendants deny the same and put Plaintiff to proof.

19. Paragraph 20 of Plaintiff's Complaint is vague and states legal conclusions, and therefore Defendants deny the same and put Plaintiff to proof.

20. Paragraph 21 of Plaintiff's Complaint is vague and states legal conclusions, and therefore Defendants deny the same and put Plaintiff to proof.

21. No response is required for Paragraph 22 of Plaintiff's Complaint.

22. Paragraph 23 of Plaintiff's Complaint states legal conclusions and is vague and incapable of a response. Further, Plaintiff refers to "Defendant Dakota" and "Defendant Minnesota" who are not named defendants in this lawsuit.

23. No response is required for Paragraphs 24 and 25 of Plaintiff's Complaint.

24. Paragraph 26 of Plaintiff's complaint states legal conclusions and is vague. However, Defendants deny any and all alleged wrongdoing.

25. Defendants admit Paragraph 27 of Plaintiff's Complaint.

26. Defendants deny Paragraph 28 of Plaintiff's Complaint.

27. Paragraph 29 of Plaintiff's Complaint is vague. However, Defendants are without sufficient information to admit or deny these allegations, and therefore, deny the same and put Plaintiff to proof.

28. As to Paragraphs 30 and 31, Defendants are without sufficient information to admit or deny these allegations, and therefore, deny the same and put Plaintiff to proof.

29. With regard to Paragraph 32, Defendants admit that Tigst Asnake stated that Mr. Aden was unemployed on July 2, 2019. However, the Defendants are without sufficient information to admit or deny these allegations, and therefore, deny the same and put Plaintiff to proof.

30. Defendants are without sufficient information to admit or deny the allegations in Paragraph 33 of Plaintiff's Complaint, and therefore, deny the same and put Plaintiff to proof.

31. Defendants deny the allegations in Paragraph 34 of Plaintiff's Complaint.

32. As to Paragraph 35 of Plaintiff's Complaint, Defendants admit that Mr. Aden and Ms. Asnake had a personal relationship. However, the Defendants are without sufficient information to admit or deny the remaining the remaining allegations, and therefore, deny the same and put Plaintiff to proof.

33. Paragraph 36 is vague and incapable of response. However, Defendants deny based on Ms. Asnake's 911 call, which speaks for itself.

34. As to Paragraph 37, Defendants deny the use of force was unlawful, but the remaining allegations are vague and incapable of a response.

35. Paragraph 38 is vague as to time frame. Defendants admit that Ms. Asnake called 911 and reported that Aden had pulled a gun, pointed it at her and forced her to drive her vehicle. Also, Defendant admits she told Eagan Police Officer Peter Meyer that she did not know Aden to

be violent towards her prior to this incident, however, he did have a short temper. Defendants deny the remaining allegations and put Plaintiff to proof.

36. As to Paragraph 39, admit that Ms. Asnake told Eagan Police Officers Peter Meyer and Steve Loundsbury that on July 2, 2019 Aden was waiting for her when she got home from work and she told Officer Meyer that was not abnormal. Defendants deny the remaining allegations and put Plaintiff to proof.

37. As to Paragraph 40, Defendants admit Ms. Asnake told Officer Meyer as alleged. Defendants deny the remaining allegations.

38. As to Paragraph 41, Defendants admit Ms. Asnake told Officer Meyer as alleged. Defendants deny the remaining allegations.

39. As to Paragraph 42 of Plaintiff's Complaint, Defendants admit that Ms. Asnake told Eagan Police Officer Steve Loundsbury that she and Aden had a conversation in her vehicle for 20 to 30 minutes. Defendants deny the remaining allegations and put Plaintiff to proof.

40. Paragraph 43 is vague as to time. However, Defendants admit that Eagan Police Officer Steve Loundsbury's BCA transcript speaks for itself. Defendants deny the remaining allegations and put Plaintiff to proof.

41. Defendants deny Paragraph 44.

42. Paragraph 45 is vague as to time. However, Defendants admit Eagan Police Officer Steve Loundsbury at one point described Ms. Asnake as being uncooperative. Defendant deny the remaining allegations and put Plaintiff to proof.

43. Defendants are without sufficient information to admit or deny the allegations in Paragraph 46 of Plaintiff's Complaint, and therefore deny the same and put Plaintiff to proof.

44. Paragraph 47 is vague as to time. However, Defendants admit that at certain times Ms. Asnake told Officers that she was busy, did not answer inquiries and hung up the phone on Officers. Defendants are without sufficient information to admit or deny whether Ms. Asnake refused to answer telephone calls, and therefore deny the same and put Plaintiff to proof.

45. As to Paragraph 48, Defendants admit that Ms. Asnake called 911 at approximately 6:05 p.m. on July 2, 2019. However, Defendants are without sufficient information to admit or deny that she refused to meet face-to-face with Officers, and therefore deny the same and put Plaintiff to proof.

46. Defendants admit Paragraph 49 of Plaintiff's Complaint.

47. Paragraph 50 is vague and incapable of response. However, Defendants admit that Ms. Asnake was uncooperative. Defendants deny the remaining allegations and put Plaintiff to proof.

48. As to Paragraph 51, Defendants deny that Mr. Aden was walking, but admit the remaining allegations.

49. As to Paragraph 52, Defendants deny that Mr. Aden was walking, but admit the remaining allegations.

50. With regard to Paragraph 53, Defendants admit that Mr. Aden sat down on a curb in a parking lot around 6:44 p.m. Defendants deny the remaining allegations and put Plaintiff to proof.

51. Paragraph 54 is vague and incapable of response. However, Defendants admit that law enforcement from multiple Minnesota jurisdictions arrived on scene. Defendants deny the remaining allegations and put Plaintiff to proof.

52. Paragraph 55 is vague and incapable of response. However, Defendants admit that law enforcement from multiple Minnesota jurisdictions were located on scene and armored vehicles were on site. Defendants deny the remaining allegations and put Plaintiff to proof.

53. Paragraph 56 is vague as to the term "inner perimeter." However, Defendants admit that highly trained SWAT team members were on scene.

54. Paragraph 57 is vague and incapable of response. However, Defendants admit that on scene law enforcement personnel were equipped with body armor, helmets, shields, assault rifles and less-lethal weapons.

55. Paragraph 58 is vague as locations. However, Defendants admit that snipers were position on a roof top and on the ground at the scene.

56. Paragraph 59 is vague as to "these officers" and "K-9 units." However, Defendants admit multiple K-9 Officers and their K-9 partners were on scene as a less-lethal use of force option.

57. Paragraph 60 is vague as to time and the term "vehicle." However, Defendants admit an MRAP vehicle and three Bearcat vehicles were on scene at certain times and in various positions. Further, Defendants admit that at times law enforcement were armed with rifles in turrets.

58. Paragraph 61 is vague and incapable of response. However, Defendants admit an MRAP vehicle and three Bearcat vehicles were on scene at certain times.

59. As to Paragraph 62, Defendants admit there was a fence on one side of the parking lot, which from Aden's position, would have been to his right. Defendants deny the remaining allegations and put Plaintiff to proof.

60. Paragraph 63 is vague as to time and the term “area”, and therefore, is incapable of response. However, Defendants admit that at certain times flood lights and headlights were used by law enforcement.

61. Paragraph 64 is vague as to “clearly observe.” However, Defendants deny and put Plaintiff to proof.

62. Paragraph is 65 is vague as to “largely blinded” and is pure speculation. However, Defendants deny and put Plaintiff to proof.

63. Defendants deny Paragraph 66.

64. As to Paragraph 67, Defendants admit that a secondary perimeter of law enforcement personnel and vehicles was maintained to divert traffic and keep citizens from entering the active crime scene and in an attempt to contain Aden.

65. Defendants deny paragraph 68.

66. Defendants deny Paragraph 69.

67. Paragraph 70 does not require a response because it contains the speculation and opinion of the author. However, if a response is required, Defendants deny these allegations and put Plaintiff to proof.

68. Paragraph 71 is vague and speculative. However, Defendants deny these allegations and put Plaintiff to proof.

69. As to Paragraph 72, Defendants admit that at approximately 6:45 p.m., Mr. Aden sat on the curb in front of 1971 Seneca Road and put a gun to his head. Defendants admit that at approximately 10:38 p.m. a plan was initiated to increase the distance between Aden and the gun in order to take him into custody. (CAD) Defendants deny the remaining allegations and put Plaintiff to proof.

70. Paragraphs 73 and 74 are vague, however Defendants admit the audio and video speak for themselves.

71. As to Paragraph 75, Defendants admit the audio and video speak for themselves. However, Defendants admit that, during 6:44 p.m. and 10:37 p.m., Aden did not stand.

72. As to Paragraph 76, Defendants admit the audio and video speak for themselves. However, Defendants admit that between 6:44 p.m. and 10:37 p.m., Aden did not stand up and run from the scene.

73. As to Paragraph 77, Defendants cannot admit or deny Aden's intentions. However, Defendants admit that the audio and video speak for themselves, and Aden pointed the gun at law enforcement between 6:44 p.m. and 10:37 p.m., and after that time period as well.

74. As to Paragraph 78, Defendants cannot admit or deny Aden's subjective intentions. Defendants admit the audio and video speak for themselves, but deny these allegations and put Plaintiff to proof. (Roger New statement and Aden was looking around)

75. With regard to Paragraph 79, the Defendants admit the audio and video speak for themselves. Defendants deny these allegations and put Plaintiff to proof.

76. As to Paragraph 80, Defendants admit the audio and video speaks for themselves. Defendants deny these allegations and put Plaintiff to proof.

77. With regard to Paragraph 81, Defendants admit the audio and video speak for themselves. Defendants deny these allegations and put Plaintiff to proof.

78. As to Paragraph 82, Defendants admit the audio and video recordings speak for themselves. Defendant denies these allegations and put Plaintiff to proof.

79. With regard to Paragraph 83, Defendants admit the audio and video speak for themselves. Defendants deny these allegations and put Plaintiff to proof.

80. As to Paragraph 84, Defendants admit the audio and video speak for themselves. Defendants deny these allegations and put Plaintiff to proof.

81. With regard to Paragraph 85, Defendants admit the audio and video speak for themselves and admit these allegations.

82. Defendants deny Paragraph 86.

83. Paragraph 87 is vague as to time and place. However, Defendants admit that Officer Thul and Sergeant Ondrey witnessed Aden flee from police and discovered him in front of 1971 Seneca Road with a gun to his head.

84. Paragraph 88 is vague as to time and terms. Defendants admit that Sergeant Ondrey told the BCA that he, Officer Tony Sundgaard and Bunsville K9 came up with a plan that if Aden attempts to flee, officers could use less lethal means and dogs to subdue him. Defendants deny the remaining allegations and put Plaintiff to proof.

85. As to Paragraph 89, Defendants deny that the rules of engagement changed nor did the goal change of attempting to resolve the encounter with Aden peacefully and without the use of deadly force. Therefore, Defendants deny these allegations and put Plaintiff to proof.

86. With regard to Paragraph 90, Defendants admit that initially Officer Thul shouted commands for Aden to drop the gun that was up to his head, which Aden responded to by saying "F'in shoot me. F'in shoot me. F'ing shoot me."

87. As to Paragraph 91, Defendants admit that while Officer Thul was negotiating with Aden, Aden put the gun down and picked the gun back up and put it against his head.

88. With regard to Paragraph 92, Defendants deny that this is an accurate account of what Officer Thul told the BCA. Officer Thul stated Aden did try talking to him several times,

but Officer Thul was having a hard time hearing what Aden was saying. As a result, Officer Thul tried to eliminate some noise, and asked Officer Meade to turn the vehicle engine off.

89. As to Paragraph 93, Defendants deny this is an accurate account of what Office Thul told the BCA. However, Defendants admit that Office Thul did tell the BCA that he remembered thinking "I'm gonna have to shoot this guy."

90. With regard to Paragraph 94, Defendants admit that Officer Thul was commanded to get into a BearCat where he continued negotiations with Aden through the public address system.

91. As to Paragraphs 95, Defendants admit that Officer Thul was relieved by negotiators Eagan Police Officer Joseph Moseng, Eagan Detective Karin Pederson and Eagan Detective Heather Berens. Defendants deny the remaining allegations and put Plaintiff to proof.

92. As to Paragraph 96, Defendants admit that Officer Moseng and Detective Pederson were members of the negotiation team. Defendants deny the remaining allegations and put Plaintiff to proof.

93. With regard to Paragraph 97, Defendants admit Officer Moseng attempted to communicate and negotiated with Aden through the PA system. Defendants deny the communications were one way.

94. Paragraph 98 is vague as to time and terms. However, Defendants deny these allegations and put Plaintiff to proof.

95. Paragraph 99 is vague as to time and terms. However, Defendants deny these allegations and put Plaintiff to proof.

96. Paragraph 100 is vague as to time and terms. However, Defendants deny these allegations and put Plaintiff to proof.

97. As to Paragraph 101, Defendants admit they provided Aden with an Officer's cell phone. Defendants deny the remaining allegations and put Plaintiff to proof.

98. Defendants deny Paragraph 102.

99. Defendants deny Paragraph 103.

100. Defendants deny Paragraph 104.

101. Defendants deny Paragraph 105.

102. Defendants deny Paragraph 106.

103. As to Paragraph 107, Defendants admit they provided Aden with a cell phone at approximately 9:22 p.m. Defendants deny the remaining allegations put Plaintiff to proof.

104. Paragraph 108 is vague and ambiguous as to terms and time. Thus, Defendants deny these allegations and put Plaintiff to proof.

105. Paragraph 109 is vague and ambiguous as to terms and time. However, Defendants admit that Aden did answer the phone sometimes, but not always, and did engage in multiple conversations with Officer Moseng.

106. Paragraph 110 is vague and ambiguous as to terms and time. Defendant deny these allegations and put Plaintiff to proof.

107. Paragraph 111 is vague and ambiguous. However, Defendants admit that Officer Moseng attempted to de-escalate the situation by communicating with Aden, but deny the remaining allegations.

108. As to Paragraph 112, Defendant admits Aden put the gun to his head, put the gun down to the ground, picked the gun up again and put it to his head, and then put the gun back down to the ground again at approximately 8:56 p.m. Defendants are without sufficient

information to admit or deny the remaining allegations, and therefore, deny those allegations and put Plaintiff to proof.

109. Paragraph 113 is vague as to terms. However, Defendant denies these allegations and put Plaintiff to proof.

110. Paragraph 114 is vague and ambiguous as to terms. Defendants admit that Aden told Officer Moseng that the gun he stole from his brother fell and fired when he was running. However, Defendants are without sufficient information to admit or deny whether that statements were "direct" or truthful, therefore Defendants deny the allegations in this paragraph and put Plaintiff to proof.

111. Paragraph 115 is vague as to time. Therefore, Defendants deny these allegations and put Plaintiff to proof.

112. As to Paragraph 116, Defendants deny "instead" but admit they received a report from a citizen that they heard what sounded like a gunshot.

113. Defendants deny Paragraph 117.

114. Defendants admit Paragraph 118.

115. As to Paragraph 119, Defendants deny these allegations because they are not an accurate account of what Aden stated. Defendants admit Aden told Officer Moseng "Yeah I shouldn't have ran. And then the fact that the gun is not mine (inaudible) way out of proportion and, and well this is too late."

116. Paragraph 120 is vague and is an inaccurate translation of what was told to law enforcement. Defendants admit the transcript of Aden's conversations and negotiations with Officer Moseng speak for itself. Thus, Defendants deny these allegations and put Plaintiff to proof.

117. Defendants deny Paragraph 121.

118. Defendants deny Paragraph 122.

119. As to Paragraph 123, Defendants admit Aden put the gun down for the second time at approximately 8:56 p.m. Defendants admit the video speaks for itself. Defendants deny the remaining allegations and put Plaintiff to proof.

120. As to Paragraph 124, Defendants admit that Aden called and spoke to Ms. Asnake on the phone provided by law enforcement multiple times. Defendants are unable to admit or deny the remaining allegations, and therefore deny those allegations and put Plaintiff to proof.

121. Defendants are unable to admit or deny the allegations in Paragraph 125, and therefore deny those allegations and put Plaintiff to proof.

122. As to Paragraph 126, Defendants admit that Aden told them that he had spoken to her on the phone. Defendants deny the remaining allegations and put Plaintiff to proof.

123. Paragraph 127 is vague as to terms and time. Defendants admit that at one point law enforcement took Ms. Asnake's phone away from her so Aden would only communicate with the negotiators. Defendants deny the remaining allegations and put Plaintiff to proof.

124. Defendants deny Paragraph 128.

125. Defendants deny Paragraph 129.

126. Paragraph 130 is pure speculation. Defendants are without sufficient information to admit or deny the allegations in this paragraph, and therefore Defendants deny these allegations and put Plaintiff to proof.

127. Defendants deny Paragraphs 131 and 132.

128. Paragraph 133 is vague and Defendants deny these allegations.

129. Paragraph 134 is vague as to time. Defendants admit Aden put the gun on the ground, and at points, moved slightly away from the gun. Defendants deny the remaining allegations and put Plaintiff to proof.

130. As to Paragraph 135, Defendants admit the audio recordings and transcript speak for themselves. Thus, Defendants deny these allegations and put Plaintiff to proof.

131. Paragraph 136 is vague and ambigous. Defendants deny these allegations.

132. Defendants deny Paragraph 137.

133. With regard to Paragraph 138, Defendants admit the audio, video and transcripts speak for themselves. Defendants deny the remaining allegations and put Plaintiff to proof.

134. Defendants deny Paragraphs 139 and 140.

135. Paragraphs 141, 142 and 143 are vague as to terms and deny the term "assault plan." Defendants admit Lieutenant Andrew Speakman, Sergeant Cory Cardenas and Sergeant May Yakovlev developed the tactical plan. Also, Defendants admit Chief Roger New is the Chief of Police for the Eagan Police Department and he authorized the tactical plan. Defendants deny the remaining allegations and put Plaintiff to proof.

136. Defendants deny Paragraph 144 of Plaintiff's Complaint.

137. Paragraph 145 is vague and incapable of response. Defendants admit the audio recordings, video recordings and transcripts speak for themselves. Defendants deny these allegations and put Plaintiff to proof.

138. As to Paragraph 146, Defendants deny this is an accurate and/or complete citation of Chief New's BCA Interview. However, Defendants admit the transcript of Chief New's BCA interview speaks for itself.

139. Paragraph 147 is vague as to time. Defendants deny Paragraph 147 is an accurate and/or complete citation of Chief New's BCA interview, and therefore, Defendants deny these allegations and put Plaintiff to proof.

140. Paragraph 148 is vague as to time and assertion. Defendants admit that Aden had the gun to his head; put down the gun; picked the gun up and put it up to his head again; and put it down on the ground a second time. Defendants deny the remaining allegations and put Plaintiff to proof.

141. Defendants deny Paragraph 149.

142. Paragraph 150 is argument and speculation. Defendants deny that any spotlights were blinding. However, Defendants are without sufficient information to admit or deny the remaining allegations, and therefore deny the same and put Plaintiff to proof.

143. Defendants deny Paragraph 151.

144. Defendants deny Paragraphs 152, 153, 154 and 155.

145. Paragraph 156 is vague and ambiguous and Defendants deny the allegations.

146. Defendants deny Paragraphs 157, 158 and 159.

147. Paragraph 160 is vague as to terms. Defendants admit that Lieutenant Speakman is the SWAT team supervisor, took lead in the development of the tactical plan, which was a collaborative plan. Defendants deny the remaining allegations and put Plaintiff to proof.

148. Defendants deny Paragraphs 161 and 162 and Lieutenant Speakman's BCA interview speaks for itself.

149. Defendants deny Paragraphs 163,164 and 165.

150. As to Paragraph 166, Defendants deny this is an accurate citation of the transcript of Lieutenant Speakman's interview with the BCA. Defendants admit the transcript of Lieutenant Speakman's interview with the BCA speaks for itself.

151. Defendants deny Paragraphs 167, 168, 169 and 170.

152. As to Paragraph 171, Defendants admit that the trained negotiators were not solicited for advice on how to devise a tactical plan. However, they were consulted at times throughout the incident. Defendants deny the remaining allegations and put Plaintiff to proof.

153. With regard to Paragraph 172, the transcripts of the BCA interviews speak for themselves, and to the extent the allegations are inconsistent with the same, Defendant deny these allegations and put Plaintiff to proof.

154. Paragraph 173 is vague and ambiguous. Defendants deny these allegations and put Plaintiff to proof.

155. Defendants deny Paragraph 174.

156. As to Paragraph 175, Defendants admit the transcript of Detective Pederson's BCA interview speaks for itself.

157. With regard to Paragraph 176, Defendants deny this is an accurate account of Detective Pederson's BCA interview and deny these allegations.

158. As to Paragraph 177, Defendants deny this is an accurate account of Sergeant Wegner's BCA interview and deny these allegations.

159. With regard to Paragraph 178, Defendants deny this is an accurate account of Sergeant Wegner's BCA interview and deny these allegations.

160. As to Paragraph 179, and footnote 2, Defendants deny that this is an accurate account of Officer Moseng's BCA interview and deny that Officer Moseng's position as union

president affected his answers to the BCA's questions. Defendants admit the transcript of Officer Moseng's BCA interview, along with the transcripts of Chief New and Lieutenant Speakman's BCA interviews, speak for themselves. To the extent these allegations are inconsistent with the BCA interviews, Defendants deny the same and put Plaintiff to proof.

161. With regard to Paragraph 180, Defendants deny this is an accurate account of Officer Harrell's BCA interview. Defendants admit the transcript of Officer Harrell's BCA interview speaks for itself.

162. Defendants deny Paragraph 181.

163. As to Paragraph 182, Defendants deny this is an accurate account of Chief New's BCA interview. Defendants admit the transcript of Chief New's BCA interview speaks for itself. (New statement p. 5)

164. Defendants deny Paragraphs 183 and 184. However, Defendants admit the transcript of Chief New's BCA interview speaks for itself.

165. Defendants deny Paragraphs 185 and 186.

166. Paragraph 187 is vague and incapable of response. Therefore, Defendants deny these allegations and put Plaintiff to proof.

167. Defendants deny Paragraphs 188 – 193.

168. Paragraph 194 is speculative and vague. However, Defendants are without sufficient information to admit or deny the allegations in Paragraph 194, and therefore deny the same and put Plaintiff to proof.

169. Paragraph 195 is vague as to terms. Defendants admit a perimeter was established with the hope of preventing motorists from entering the active scene. However,

Defendants are without sufficient information to admit or deny whether the perimeter would have prevented entry to the "area," and therefore deny the same and put Plaintiff to proof.

170. As to Paragraph 196, the Defendants admit they understood the risk posed by the gun wielding Mr. Aden. Defendants deny the remaining allegations and put Plaintiff to proof.

171. Paragraph 197 is vague and incapable of response. However, Defendants admit that the number of multi-jurisdictional personnel, resources and time allocated to this incident, which was documented by the BCA and the Dakota County Attorney's office, speak for themselves. Defendants deny the remaining allegations and put Plaintiff to proof.

172. Defendants deny Paragraph 198.

173. With regard to Paragraph 199, Defendants deny this is an accurate description of Sergeant Wegner's duties and deny this is an accurate account of Sergeant Wegner's BCA interview. Therefore, we deny these allegations and put Plaintiff to proof.

174. As to Paragraph 200, admit Chief New was in charge of the scene. Defendants deny the remaining allegations and put Plaintiff to proof.

175. Defendants deny Paragraph 201.

176. As to Paragraph 202, Defendants admit that Chief New could have obtained Aden's criminal history and deny the remaining allegations.

177. As to Paragraph 203, and footnote 3, Defendants admit that Sergeant Yakovlev help develop the tactical plan. Footnote 3 is irrelevant and is an inaccurate account of the police encounter with Map Kong in 2016 and the 8th Circuit Court of Appeals dismissed the lawsuit. Defendants deny the remaining allegations and put Plaintiff to proof.

178. Paragraph 204 is vague as to terms. However, Defendants deny these allegations and put Plaintiff to proof.

179. With regard to Paragraph 205, Defendants admit that one of Aden's brothers was the scene and was reportedly speaking on the phone via FaceTime with his sister. Defendants deny the remaining allegations and put Plaintiff to proof.

180. Defendants deny Paragraph 206.

181. As to Paragraph 207, Defendants deny this is an accurate account of Officer Schultz's BCA interview. Defendants admit the transcript of Officer Schultz's BCA interview speaks for itself.

182. Paragraph 208 is vague as to term "brother," because one brother was calling and sending text messages to Aden during the incident. However, Defendants admit the brother who arrived on scene asked to speak with Aden and provided information to law enforcement. Defendants deny the remaining allegations and put Plaintiff to proof.

183. Paragraph 209 is vague as to terms. However, Defendants deny these allegations and put Plaintiff to proof.

184. Defendants deny Paragraphs 210 and 211.

185. As to Paragraph 212, Defendants deny this is an accurate account of Detective Pederson's BCA Interview. Defendants admit the transcript of Detective Pederson's BCA interview speaks for itself. Defendants admit one of Aden's siblings said they didn't understand what is going on. Defendants deny the remaining allegations and put Plaintiff to proof.

186. Concerning Paragraph 213, Defendants deny this is an accurate account of Detective Pederson's BCA Interview. Defendants admit the transcript of Detective Pederson's BCA interview speaks for itself. Defendants admit that Aden's siblings and family refused to give Detective Pederson any information about Aden and requested to come to the scene. Defendants deny the remaining allegations and put Plaintiff to proof.

187. As to Paragraph 214, Defendants deny this is an accurate account of Detective Pederson's BCA Interview. Defendants admit the transcript of Detective Pederson's BCA interview speaks for itself. Defendants admit Detective Pederson told Aden's family members that they cannot come to the scene and to let Detective Pederson talk to Aden.

188. With regard to Paragraph 215, Defendants deny this is an accurate account of Detective Pederson's BCA Interview. Defendants admit the transcript of Detective Pederson's BCA interview speaks for itself. Defendants admit that another one of Aden's brothers called Detective Pederson and informed her that Aden had stolen his 9mm Smith and Wesson gun. Defendants deny the remaining allegations and put Plaintiff to proof.

189. Defendants admit Paragraph 216.

190. Paragraph 217 is vague and incapable of response. However, Defendants deny this is an accurate account of Officer Moseng's BCA Interview. Defendants admit the transcript of Officer Moseng's BCA interview speaks for itself.

191. Paragraph 218 is vague and incapable of response. Defendants deny these allegations and put Plaintiff to proof.

192. As to Paragraph 219, Defendants admit they did not use Aden's family as third-party intermediaries and one of the negotiators contacted Faysal Madara, a Somali cultural liaison with a local school district. The transcripts of the BCA interviews speak for themselves. Defendants deny the remaining allegations and put Plaintiff to proof.

193. Defendants are without sufficient information to admit or deny the allegations in Paragraph 220, and therefore Defendants deny the same and put Plaintiff to proof.

194. Paragraph 221 is vague and Defendants deny these allegations.

195. Paragraph 222 is vague and incapable of response. Thus, Defendants are without sufficient information to admit or deny these allegations, and therefore Defendants deny the same and put Plaintiff to proof.

196. Defendants deny Paragraph 223.

197. Paragraph 224 is vague and ambiguous. Defendants admit that law enforcement officers knew, prior to and at the time deadly force was used, that it was reported that Aden confronted Ms. Asnake regarding the release of explicit pictures taken of Aden. Defendants deny the remaining allegations and put Plaintiff to proof.

198. With regard to Paragraph 225, Defendants admit it did collect background information on Aden. Defendants deny the remaining allegations and put Plaintiff to proof.

199. As to Paragraph 226, Defendants admit it did investigate Aden. Defendants deny the remaining allegations.

200. Defendants deny Paragraphs 227 and 228.

201. Paragraph 229 is vague. Defendants deny these allegations.

202. Paragraph 230 is vague. Accordingly, Defendants deny these allegations and put Plaintiff to proof.

203. Concerning Paragraph 231, the allegations are vague, however, Defendants admit Aden was non-complaint. Defendants deny the remaining allegations and put Plaintiff to proof.

204. Defendants deny Paragraph 232.

205. With regard to Paragraph 233, Defendants admit that Aden was not fully contained and he could escape. Defendants deny the remaining allegations and put Plaintiff to proof.

206. Defendants deny Paragraph 234.

207. Paragraph 235 is vague as to time. Defendants deny these allegations and admit that Aden had already fled with a gun through one perimeter that day.

208. As to Paragraph 236, Defendants admit Aden was located near some gas meters and the tactical plan did not involve the application of deadly force. Defendants deny the remaining allegations and put Plaintiff to proof.

209. Defendants deny Paragraph 237.

210. With regard to Paragraph 238, Defendants deny this is an accurate or complete account of Sergeant Ondrey's BCA Interview. Defendants admit the transcript of Sergeant Ondrey's BCA interview speaks for itself. Defendants deny these allegations and put Plaintiff to proof.

211. Defendants deny Paragraphs 239 and 240.

212. Paragraph 241 is vague and incapable of response. Defendants admit the audio, videos and transcripts of the BCA interviews speak for themselves.

213. Defendants deny Paragraph 242.

214. Paragraph 243 does not require a response. However, if it does, Defendants deny it is an accurate depiction.

215. Defendants admit Paragraph 244.

216. As for Paragraph 245, the color of the Officers' skin is irrelevant. Defendants admit that Sergeant Christopher Yates, Officer Scott Sager, Officer Matthew Ryan, Officer Jacob Lucas, Officer Ryan Arbuckle and medic Patrick Sweany are white males.

217. Defendants admit Paragraph 246.

218. With regard to Paragraph 247, the color of the Officers' skin is irrelevant. Defendants admit that Officer Chad Anderson, Officer Ryan Schultz, Officer Eric Tessmer, Officer Jacob Peterson and Officer Tony Sundergaard are white males.

219. Defendants admit Paragraph 248. In addition, Officer Josh Seifert was also positioned near the MRAP.

220. As to Paragraph 249, the color of the Officers' skin is irrelevant. Defendants are without sufficient information to admit or deny these allegations, and therefore, Defendants deny the same and put Plaintiff to proof.

221. Defendants admit Paragraph 250.

222. Concerning Paragraph 251, the color of the Officers' skin is irrelevant. Defendants admit that Officer Nick Melser and Officer Mike Perron are white males.

223. Defendants deny Paragraph 252.

224. As to Paragraph 253, the color of the Officers' skin is irrelevant. Defendants admit that Officer Eric Bengston and Officer Mike Vonderharr are white males.

225. Defendants admit Paragraph 254.

226. With regard to Paragraph 255, the color of the Officers' skin is irrelevant. Defendants admit that Officer Adam Stier, Officer Anthony Kiehl, Officer Chad Clausen and Officer Kyle Posthumus are white males.

227. Paragraph 256 is vague. Defendants admit a K-9 Unit was positioned at approximately the 10 o'clock position near Officer Andrew Helgerson's squad. Defendants deny the remaining allegations and put Plaintiff to proof.

228. Defendants deny Paragraph 257.

229. With regard to Paragraph 258, Defendants deny this an accurate description of the tactical plan, and therefore Defendants deny the same and put Plaintiff to proof.

230. Defendants deny Paragraphs 259 and 260.

231. Paragraph 261 is vague. Defendants admit Paragraph 261 states the tactical plan in part.

232. As to Paragraph 262, Defendants admit, that approximately 10:38 p.m., the tactical plan was initiated. Defendants deny the remaining allegations and put Plaintiff to proof.

233. With regard to Paragraph 263, Defendants admit the tactical plan was recorded by multiple audio and video devices. Defendants deny the remaining allegations and put Plaintiff to proof.

234. Concerning Paragraph 264, Defendants admit Aden was sitting on the curb, while on the phone with Officer Moseng, with the gun very close to Aden's right foot, just before the tactical plan was initiated. Defendants deny the remaining allegations and put Plaintiff to proof.

235. As to Paragraph 265, Defendants admit the tactical plan commenced with the deployment of flashbangs from Officers Jacob Lucas and Patrick Sweany, who were near the Bloomington Bearcat, and the flashbangs exploded in front and to the right of Aden. Defendants admit the videos of the incident speak for themselves, and therefore Defendants deny the remaining allegations and put Plaintiff to proof.

236. With regard to Paragraph 266, Defendants admit less lethal foam bullets were fired from Officers Jeremy Pilcher and Nick Melser who were located to Aden's left hand side. Defendants admit the videos of the incident speak for themselves, and therefore Defendants deny the remaining allegations and put Plaintiff to proof.

237. Concerning Paragraph 267, Defendants admit the videos of the incident speak for themselves, and Defendants deny these allegations and put Plaintiff to proof.

238. As to Paragraph 268, Defendants admit Aden picked up the gun and the videos of the incident speak for themselves. Defendants deny the remaining allegations and put Plaintiff to proof.

239. Paragraph 269 is vague and Defendants deny these allegations.

240. Defendants deny Paragraph 270.

241. Paragraph 271 is vague. Defendants admit a third flashbang detonated in near proximity to the where the first flashbang detonated. Defendants admit the videos of the incident, including the timing of the detonations of the flashbangs, speak for themselves, and therefore Defendants deny the remaining allegations and put Plaintiff to proof.

242. Paragraph 272 is vague. Defendants admit the videos of the incident speak for themselves, and therefore Defendants deny these allegations and put Plaintiff to proof.

243. Defendants deny Paragraph 273.

244. As to Paragraph 274, Defendants admit the videos of the incident speak for themselves, and therefore Defendants deny these allegations and put Plaintiff to proof.

245. With regard to Paragraph 275, Defendants admit the squad video from Trooper Anthony Mains' vehicle speaks for itself, and therefore Defendants deny these allegations and put Plaintiff to proof.

246. Concerning Paragraph 276, Defendants deny that Aden was attempting to surrender. Defendants admit someone can be heard on Trooper Mains' squad video saying "he's got the gun." Defendants admit Trooper Mains squad video speaks for itself, and therefore Defendants deny the remaining allegations and put Plaintiff to proof.

247. As to Paragraph 277, Defendants admit someone can be heard on Trooper Mains' squad video saying "he's got the gun," and Defendants admit Trooper Mains' squad video speaks for itself. Defendants deny the remaining allegations and put Plaintiff to proof.

248. Defendants deny Paragraph 278.

249. With regard to Paragraph 279, Defendants admit five Officers used deadly force. Defendants admit the ballistics and autopsy reports speak for themselves. Defendants deny the remaining allegations and put Plaintiff to proof.

250. As to Paragraph 280, Defendants admit five officers fired.

251. Concerning Paragraph 281, Defendants admit the videos of the incident, along with the ballistic and autopsy reports, speak for themselves, therefore Defendants deny these allegations and put Plaintiff to proof.

252. As to Paragraph 282, Defendants admit the videos of the incident, along with the ballistic and autopsy reports, speak for themselves, therefore Defendants deny these allegations and put Plaintiff to proof.

253. Paragraph 283 is vague as to terms. Defendants admit Trooper Mains' squad video speaks for itself, and therefore Defendants deny these allegations and put Plaintiff to proof.

254. Paragraph 284 is vague as to terms. Defendants admit Trooper Mains' squad video speaks for itself, and therefore Defendants deny these allegations and put Plaintiff to proof.

255. As to Paragraph 285, Defendants admit Trooper Mains' squad video speaks for itself, and therefore Defendants deny these allegations and put Plaintiff to proof.

256. Paragraph 286 is vague and incapable of response. Therefore, Defendants deny these allegations and put Plaintiff to proof.

257. With regard to Paragraph 287, Defendants admit Officer Siefert was assigned SWAT team leader, he was positioned behind the MRAP to the left of Aden and this is essentially a part of what Officer Siefert told the BCA during his interview. However, Defendants deny this is an accurate citation of the transcript of Officer Siefert's BCA interview.

258. Concerning Paragraph 288, Defendants deny this is an accurate account or citation of Officer Siefert's BCA interview. However, Defendants admit this is essentially a part of what Officer Siefert told the BCA during his interview.

259. Paragraph 289 is vague as to time. Defendants deny these allegations and put Plaintiff to proof.

260. As to Paragraph 290, Defendants admit Aden was shot eleven times, including to his left arm and back, and Defendants admit the autopsy and ballistic reports speak for themselves. Defendants deny the remaining allegations and put Plaintiff to proof.

261. With regard to Paragraph 291, Defendants admit the autopsy reports speak for themselves. However, based on those reports, Defendants admit Aden was shot in the left upper arm, abdomen/chest, left wrist/forearm, chest, back, legs and left foot.

262. Concerning Paragraph 292, Defendants admit the tactical plan was designed to safely take Aden into custody. Defendants deny the remaining allegations and put Plaintiff to proof.

263. Defendants deny Paragraphs 293, 294 and 295.

264. Paragraph 296 is vague and ambiguous. Defendants deny these allegations and put Plaintiff to proof.

265. Defendants deny Paragraphs 297 and 298.

266. As for Paragraph 299, Defendants deny this is accurate description of the tactical plan, and therefore Defendants deny these allegations and put Plaintiff to proof.

267. Paragraph 300 is vague and ambiguous. Defendants deny Paragraph 300.

268. Defendants deny Paragraph 301.

269. With regard to Paragraphs 302 and 303, Defendants admit these comments were made, but deny these are complete citations of Officer Vonderharr's remarks on his body camera video, and deny he was referring to the tactical plan as a "shit show." Officer Vonderharr's body camera video speaks for itself.

270. Defendants deny Paragraph 304.

271. Concerning Paragraph 305, Defendants admit Officer Siefert, assigned SWAT team leader, stated to the BCA that he observed the execution of the tactical plan behind the MRAP that was to Aden's left. Defendants deny the remaining allegations and put Plaintiff to proof.

272. Defendants deny Paragraph 306.

273. As to Paragraph 307, Defendants admit that Officer Siefert told the BCA he did not know lethal shots were fired until he heard Sergeant Yates air "spaghetti." Defendants deny the remaining allegations and put Plaintiff to proof.

274. Concerning Paragraph 308, Defendants admit K-9's were not released. Defendants deny the remaining allegations and put Plaintiff to proof.

275. With regard to Paragraph 309, Defendants deny the allegations pertaining to Officer Sungaard. The remaining allegations are vague, and therefore Defendants deny the remaining allegations and put Plaintiff to proof.

276. Paragraphs 310, 311, 312, 313, 314, 315, 316, 317 and 318 call for legal conclusions. Defendants deny these Paragraphs.

277. As to Paragraph 319, Defendants admit all Officers have received use of force training. The remainder of the allegations are vague and incapable of response, and therefore Defendants deny these allegations and put Plaintiff to proof.

278. Defendants deny Paragraphs 320 and 321.

279. Defendants are without sufficient information to admit or deny the allegations contained in Paragraph 322, and therefore, the Defendants deny these allegations and put Plaintiff to proof.

280. Paragraph 323 is vague and ambiguous, and therefore, Defendants deny these allegations and put Plaintiff to proof.

281. Defendants deny Paragraph 324.

282. Concerning Paragraph 325, Defendants deny the allegations as they relate to Officer Kiehl. With regard to Officer Stier, Defendants admit that Officer Steir told the BCA that he was concerned that Aden's moving the phone from his right hand, which was closer to the gun, to his left hand "was like a pre-attack indicator that [Aden] was making. Getting ready to move towards a gun." The remaining allegations are vague and incapable of response, and therefore Defendants deny the remaining allegations and put Plaintiff to proof.

283. Paragraph 326 is vague and incapable of response, and therefore Defendants deny these allegations and put Plaintiff to proof.

284. With regard to Paragraph 327, Defendants admit Sergeant Yakovlev attended that conference.

285. As to Paragraph 328, Defendants admit the course covered the listed topics, among others. Defendants are without sufficient information to admit or deny the remaining allegations, and therefore Defendants deny the same and put Plaintiff to proof.

286. Defendants are without sufficient information to admit or deny the allegations in Paragraph 329, and therefore Defendants deny the same and put Plaintiff to proof.

287. Defendants deny Paragraphs 330 and 331.

288. With regard to Paragraph 332, Defendants admit Officers Ryan, Nelson, Peterson, Stier and Kiehl fired lethal rounds, that Aden was shot 11 times and the autopsy and ballistic reports speak for themselves. Defendants deny the remaining allegations and put Plaintiff to proof.

289. Paragraph 333 is vague and incapable of response, and therefore Defendants deny these allegations and put Plaintiff to proof. Further, Officer Ryan's BCA interview speaks for itself.

290. Paragraph 334 is vague as to time. Defendants admit Officer Ryan was outside the Bloomington Bearcat and Defendants deny the remaining allegations and put Plaintiff to proof.

291. As to Paragraph 335, Officer Ryan's BCA interview speaks for itself and Defendants deny these allegations.

292. Concerning Paragraph 336, Defendants admit the language quoted is contained in part in the transcript of Officer Ryan's BCA interview, said quoted language is taken out of context, and the transcript of Officer Ryan's BCA interview speaks for itself. Defendants deny the remaining allegations and put Plaintiff to proof.

293. Paragraph 337 is vague as to terms, and Defendants deny these allegations and put Plaintiff to proof.

294. As to Paragraph 338, Defendants admit the language quoted is contained in the transcript of Officer Ryan's BCA interview, said quoted language is only a small section of a sentence and is taken out of context, and the transcript of Officer Ryan's BCA interview speaks for itself. Defendants deny the remaining allegations and put Plaintiff to proof.

295. Defendants deny Paragraph 339.

296. Paragraph 340 is vague and impossible to answer. Defendants admit the transcript of Officer Ryan's BCA interview, along with the videos of the incident, speak for themselves.

297. Paragraph 341 is vague and Defendants deny these allegations.

298. Defendants deny Paragraph 342.

299. As to Paragraph 343, Defendants admit Officer Ryan told the BCA that he witnessed Aden raise the gun in his hand and point it in the direction of the Edina BearCat. Defendants deny the remaining allegations and put Plaintiff to proof.

300. With regard to Paragraph 344, Defendants admit that the quoted language is a partial citation of language contained in the transcript of Officer Ryan's BCA interview. Defendants deny the quoted language is the entirety of what Officer Ryan conveyed to the BCA, which is contained in the transcript of his BCA interview.

301. Defendants deny Paragraph 345.

302. Defendants admit Paragraph 346.

303. Defendants deny Paragraph 347 contain a full account of what Officer Ryan told the BCA and Defendants admit Officer Ryan's BCA transcript speaks for itself. However,

Defendants admit that after observing Aden grab the gun, swing it up to his waist and point the gun in the direction of the Edina BearCat where patrol and K-9 officers were stationed, someone radioed that Aden had the gun and Officer Ryan fired his weapon.

304. As to Paragraph 348, Defendants admit that Officer Ryan told the BCA that he believed he fired two or three rounds before his gun jammed. Defendants deny the remaining allegations and put Plaintiff to proof.

305. With regard to Paragraph 349, Defendants deny that "Dakota" is a defendant and Defendants admit the remainder of Paragraph 349.

306. Defendants deny Paragraph 350.

307. Concerning Paragraph 351, Officer Nelson's BCA interview speaks for itself and Defendants deny these allegations.

308. With regard to Paragraph 352, Defendants admit the transcript of Officer Nelson's BCA transcript speaks for itself. Defendants deny these are accurate and complete quotations from the transcript of Officer Nelson's BCA interview, and therefore deny the same and put Plaintiff to proof.

309. Paragraph 353 is vague as to time, and therefore Defendants deny that Officer Nelson's view of the handgun was fully obstructed and put Plaintiff to proof. As to the remaining allegations, Defendants admit that Office Nelson told the BCA that, after flashbangs and less lethal rounds commenced, Aden lunged forward and to the right, which exposed Aden's back. Officer Nelson's BCA interview speaks for itself and Defendants deny the remaining allegations and put Plaintiff to proof.

310. Defendants deny that Paragraph 354 is a full account or contains accurate quotations of what Officer Nelson told the BCA and Defendants admit Officer Nelson's BCA

transcript speaks for itself. However, Defendants admit parts of the quoted language in this paragraph are contained in the transcript of Officer Nelson's BCA transcript and admit that Officer Nelson considered Aden an imminent deadly threat.

311. As to Paragraph 355, Defendants admit that Aden did fire his weapon, but deny these allegations and put Plaintiff to proof.

312. With regard to Paragraph 356, Defendants admit that portions of the quoted language, although not cited entirely accurately, is contained in the transcript of Officer Nelson's BCA interview.

313. Concerning Paragraph 357 and footnote 5, Defendants admit the Officer Peterson was stationed in the turret of the Edina BearCat, which was located in front of, and to the left of, Aden. As to footnote 5, Defendants admit Officer Peterson was involved in the Premo incident in 2013, but deny that incident is relevant to the claims and defenses in this matter.

314. As to Paragraph 358, Defendants admit the video recordings and the transcripts of BCA interviews of law enforcement personnel, including, but not limited to, Officers Peterson and Ryan, speak for themselves, and therefore Defendants deny these allegations and put Plaintiff to proof.

315. With regard to Paragraph 359, Defendants admit Officer Peterson stated this during his BCA interview, which is contain in the transcript of his BCA interview.

316. Defendants deny Paragraph 360.

317. Concerning Paragraph 361 and footnote 6, Defendants admit Officers Stier and Kiehl were snipers positioned on Gerten's rooftop that was across Seneca Road. As to footnote 6, Defendants admit Officers Kiehl and Perron were involved in the Reindl incident in 2015, but are without sufficient information to deny the remaining allegations, and therefore deny and put

Plaintiff to proof. Further, Defendants deny that incident is relevant to the claims and defenses in this matter.

318. Paragraph 362 is vague. Defendants admit Officer Stier and Kiehl's BCA transcripts speak for themselves. However, Defendants admit that Officers Stier and Kiehl told the BCA that they fired their weapons after it appeared Aden had been hit by prior gun fire. Defendants deny the remaining allegations and put Plaintiff to proof.

319. With regard to Paragraph 363, Defendants admit the transcript of Officer Stier's BCA transcript speaks for itself. Defendants deny these allegations and put Plaintiff to proof.

320. Paragraph 364 is vague and incapable of a response. Therefore, Defendants deny these allegations.

321. Paragraph 365 is vague. Defendants admit the transcript of Officer Stier's BCA transcript speaks for itself. Defendants deny these allegations and put Plaintiff to proof.

322. As for Paragraph 366, Defendants admit the precise details of the tactical plan were not conveyed to Officers Stier or Kiehl. However, Defendants admit, based on their training, experience, on scene observations and communications, Officers Stier or Kiehl knew the basic design of the tactical plan.

323. Concerning Paragraph 367, Defendants admit the transcript of Officer Stier's BCA interview speaks for itself, and most, but not all, of the quoted language is accurately cited language from Officer Stier's BCA transcript.

324. With regard to Paragraph 368, Defendants admit the transcript of Officer Stier's BCA interview speaks for itself, and the quoted language is contained in Officer Stier's BCA transcript.

325. Defendants deny Paragraph 369.

326. As to Paragraph 370 is vague. Defendants admit the videos and the transcripts of BCA interview with law enforcement personnel speak for themselves, and therefore Defendants deny these allegations and put Plaintiff to proof.

327. Paragraph 371 is vague. Defendants admit the transcript of Officer Kiehl's BCA interview speaks for itself, and Defendants admit that the quoted language is contained in the transcript of Officer Kiehl's BCA interview. However, Defendants deny this is a complete and accurate quotation of Officer Kiehl's BCA interview.

328. Concerning Paragraph 372, Defendants admit Aden fired his weapon and Officer Kiehl believed he witnessed Aden fire his weapon. Defendants deny the remaining allegations and put Plaintiff to proof.

329. As to Paragraph 373, Defendants admit the quoted language, although commenced in the middle of sentence and therefore not complete, is contained in the transcript of Officer Kiehl's BCA transcript.

330. Defendants deny Paragraph 374.

331. With regard to Paragraph 375, Defendants admit the quoted language, although commenced in the middle of a sentence and therefore not complete, is contained in the transcript of Officer Kiehl's BCA transcript.

332. Paragraph 376 is vague and incapable of response, therefore Defendants deny these allegations and put Plaintiff to proof.

333. Defendants deny Paragraphs 377 and 378.

334. As to Paragraph 379, Defendants admit Officers Ryan, Nelson, Peterson, Stier and Kiehl understand that the use of deadly force without justification could be unlawful and

could violate the Fourth Amendment. Defendants deny the remaining allegations and put Plaintiff to proof.

335. Defendants deny Paragraph 380.

336. Paragraph 381 does not require a response, however if it does, Defendants deny the same and put Plaintiff to proof.

337. Defendants admit Paragraph 382.

338. As to Paragraph 383, in the first sentence, Defendants admit that 42 U.S.C § 1983 applies to federal rights. With regard to the second sentence, Defendants deny the alleged constitutional right claimed by the Plaintiff was clearly established on July 2, 2019. Defendants deny the remaining allegations in this paragraph and put Plaintiff to proof.

339. Defendants deny Paragraphs 384 – 390.

340. Paragraph 391 does not require a response, but if it does, Defendants deny the same and put Plaintiff to proof.

341. Defendants admit Paragraph 392.

342. As to Paragraph 393, in the first sentence, Defendants admit that 42 U.S.C § 1983 applies to federal rights. With regard to the second sentence, Defendants deny the alleged constitutional right claimed by the Plaintiff was clearly established on July 2, 2019. Defendants deny the remaining allegations in this paragraph and put Plaintiff to proof.

343. Defendants deny Paragraphs 394 – 399.

344. Paragraph 400 does not require a response, but if it does, Defendants deny the same and put Plaintiff to proof.

345. As to Paragraph 401, Defendants admit the Due Process Clause and *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 244 (1983) speak for themselves.

346. With regard to Paragraph 402, Defendants admit Aden was shot 11 times. Defendants deny the remaining allegations and put Plaintiff to proof.

347. Defendants deny Paragraphs 403 – 409.

348. Paragraph 410 does not require a response, but if it does, Defendants deny the same and put Plaintiff to proof.

349. Defendants admit Paragraph 411.

350. As to Paragraphs 412 and 413, Defendants admit *County of Sacramento v. Lewis*, 523 U.S. 833 (1974), along with established case law on procedural and substantive due process, speak for themselves. However, Defendants deny these are correct or complete citations.

351. Defendants deny Paragraphs 414 – 417.

352. With regard to Paragraph 418, Defendants admit the U.S. Constitution, along with the substantial case law interpreting it, speak for themselves. However, Defendants deny all the conduct alleged in this paragraph and put Plaintiff to proof.

353. Defendants deny Paragraphs 419 – 423.

354. Paragraph 424 does not require a response, but if it does, Defendants deny the same and put Plaintiff to proof.

355. Concerning Paragraph 425, Defendants admit Minnesota Statute Section 573.02 speaks for itself, however Defendants deny these allegations and puts Plaintiff to proof.

356. Defendants deny Paragraphs 426 – 430.

357. Paragraph 431 does not require a response, but if it does, Defendants deny the same and put Plaintiff to proof.

358. Defendants deny Paragraphs 432 – 435.

359. Paragraph 436 does not require a response, but if it does, Defendants deny the same and put Plaintiff to proof.

360. Defendants deny Paragraphs 437 – 445.

361. Any injuries or damages sustained by the Plaintiff were due to and caused by his own conduct.

362. That Plaintiff's Complaint fails to state a claim upon which relief may be granted.

363. That Plaintiff's claims are barred by the doctrine of qualified immunity, official immunity, and vicarious official immunity.

364. That Defendants Peterson, Ryan, Nelson, Stier, Kiehl, New, Speakman, Cardenas and Yakovlev at all times acted reasonably and properly. That Defendants Peterson, Ryan, Nelson, Stier, Kiehl, New, Speakman, Cardenas and Yakovlev were at all times performing a discretionary function while acting in good faith and with the reasonable belief that their actions were lawful, constitutional and proper.

365. The Plaintiff was guilty of unlawful conduct which was the cause of any injuries or damages that Plaintiff may have sustained.

366. The Plaintiff's claims are barred because of no constitutional injury. That these answering Defendants' actions were in good faith and in accordance with Minnesota and federal statutes and case law.

367. That Plaintiff's injuries and damages were due to and caused by third persons over whom these answering Defendants had not control and for whose conduct these answering Defendants are not responsible or liable.

368. That Plaintiff is unable to meet the legal requirements for entry of an injunctive and/or declaratory relief.

369. That Plaintiff claims may be abated by Minnesota's Wrongful Death Statute.

370. That Plaintiff's claims may be barred by any/all of the affirmative defenses contemplated in Rule 8 (c) of the Federal Rules of Civil Procedure which are not specifically set forth above. The extent to which Plaintiff's claims may be barred by one or more of said affirmative defenses cannot be determined until there has been further investigation and/or discovery. Defendants allege and incorporate all of the affirmative defenses set forth in Fed. R. Civ. P. 8 (c).

WHEREFORE, Defendants City of Bloomington, City of Burnsville, City of Eagan, City of Edina, Officer Jacob Peterson, Officer Matthew Ryan, Officer Daniel Nelson, Officer Adam Stier, Officer Anthony Kiehl, Chief Roger New, Lieutenant Andrew Speakman, Sergeant Cory Cardenas and Sergeant Maksim Yakovlev pray that Plaintiff take nothing against them for her pretended claim for relief herein; that they be given judgment for their costs, disbursements and attorney's fees and for such other relief as the Court deems just and equitable; and further, these Defendants pray that Plaintiff's Complaint be dismissed with prejudice and that judgment be entered in favor of these answering Defendants in accordance with said Order of Dismissal.

Dated: September 11, 2020

**Jardine, Logan & O'Brien, PLLP**

By: Patrick Collins

Joseph E. Flynn (A.R. #0165712)
Patrick S. Collins (A.R. #0302557)
8519 Eagle Point Boulevard, Suite 100
Lake Elmo, MN 55042-8624
Telephone: (651) 290-7416
Facsimile: (651) 223-5070
E-Mail: jflynn@jlolaw.com
pcollins@jlolaw.com

*Attorneys for Defendants*